**In the Matter of the SEARCH OF EYE-CARE PHYSICIANS OF AMERICA, 3101 North Harlem.**

**No. 94 m 474.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 4, 1996.

J. Dillon Hoey, James Louis Farina, Brian Culley Walker, Patrick W. Walsh, Hoey & Farina, Chicago, IL, for Joseph M. Devito.

Lee T. Hettinger, Rooks, Pitts & Poust, Chicago, IL, for Northeast Illinois Regional Transportation Company dba Metra.

---

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

EyeCare Physicians of America ("Eye-Care") has appealed Magistrate Judge Joan H. Lefkow's June 7, 1995, opinion and order denying EyeCare's motion to unseal an affidavit filed by the government in support of a search warrant issued November 15, 1994, for EyeCare's premises in Chicago. The parties have filed numerous briefs in this court as well as before Magistrate Judge Lefkow, and the government has filed two additional affidavits, also under seal (which EyeCare would also like to unseal), to support its opposition to EyeCare's motion. In addition, the court has held two hearings on the appeal and has held one *in camera* hearing with counsel for the government.

After thoroughly reviewing the material submitted by the parties, the affidavits in question, and the relevant legal authorities, the court finds itself in full agreement with Magistrate Judge Lefkow's excellent opinion (attached), which the court incorporates herein. In examining the issues presented by this appeal, especially in the absence of Seventh Circuit precedent,[1] the court was most concerned with protecting the common law right to inspect and copy judicial records as recognized by the Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Although in the instant case EyeCare, a subject of the government's investigation, seeks disclosure of the affidavits only to itself and its attorneys, the court must be mindful of the rights of the public as well as the parties when examining the issue of access to judicial records. *See e.g. Jepson, Inc. v. Makita Elec. Works Ltd.*, 30 F.3d 854, 858–59 (7th Cir.1994).

Courts both in and out of this circuit have dealt with similar issues in various ways. On one extreme, the Ninth Circuit in *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir.1989), has held, in effect, that the government's right to seal search warrant documents is almost absolute. On the other end of the spectrum is the decision in *In the Matter of the Search of Wag–Aero, Inc.*, 796 F.Supp. 394 (E.D.Wis.1992), in which the court held that the subject of a search has the right to unseal the affidavit in order to determine if it wishes to challenge the search warrant or obtain return of its property under Fed.R.Crim.P. 41(e).

■ This court prefers the approach taken by the Fourth Circuit in *In re Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989). In that case, the court noted that Fed.R.Crim.P. 41(g) facilitates the common law qualified right of the press and the public to access to judicial records by requiring the judicial officer who issues the warrant (i.e., the magistrate judge) to file all papers relating to the warrant in the clerk's office. That judicial officer is required to exercise her or his discretion in ruling on a request by the government to seal any part of the warrant papers for a specified period of time, or until further order. That decision to seal may not be abdicated to the government. *Id.* at 64–65. The *Goetz* court went on to hold that, "the judicial officer may deny access when sealing is essential to preserve higher values and is narrowly tailored to serve that interest," but that "the judicial officer must consider alternatives to sealing the documents. This ordinarily involves disclosing some of the documents or giving access to a redacted version." *Id.* at 65–66 (internal citations omitted).[2]

1. The court does not regard *United States v. Corbitt*, 879 F.2d 224 (7th Cir.1989), as providing the law of the circuit on the instant issue. *Corbitt* involved the problems peculiar to the disclosure of a presentence investigation report in connection with the sentencing process. While the court there recognized a common law right to disclosure of judicial records, the context was too far removed from the instant dispute to be of much guidance in the instant case.

2. This court agrees with the *Goetz* court's initial determination that there is no first amendment

right of access to an affidavit filed in support of a search warrant. Therefore, the court rejects EyeCare's argument that the government failed to prove and the Magistrate Judge failed to find a compelling governmental interest that requires sealing. *Goetz*, 886 F.2d at 64. Because the only right of access is via the common law right of access to judicial records as established in *Nixon*, the decision to grant or deny access is "left to the sound discretion of the trial court [or the Magistrate Judge], a discretion to be exercised in light of the relevant facts and circum-

In the instant case, Magistrate Judge Lefkow observed (at pp. 11–12):

> Applying this procedure [to consider alternatives such as partial disclosure or redaction], I have reviewed the affidavits supporting the motion [to seal] and the affidavits supporting the warrant. I reaffirm my conclusion that probable cause supported the issuance of the warrant. I reaffirm my conclusion that disclosure of the affidavit could result in breaching the secrecy of grand jury testimony and subpoenas, that the privacy of implicated persons who have not been charged, other witnesses and patients would be impaired by disclosure; that the identity of unnamed subjects would become clear to [Eyecare], which disclosure could jeopardize the investigation in light of particular instances revealed in the government's affidavit made in opposition to the pending motion in which persons on behalf of [Eyecare] have taken actions to discourage cooperation; that disclosure of numerous potential witnesses could result in their unwillingness to cooperate with the government; and that the scope of the investigation would be revealed so as to give [Eyecare] premature guidance concerning potential charges.
>
> I have also considered whether portions of the affidavit could be disclosed without the difficulties recited above. I agree with the government's position that the redaction would entail such a large portion of the affidavit that it is not a practical alternative. It is simply not a realistic solution in light of the complexity of the investigation, the interrelatedness of the material contained in the affidavit, the numerous witnesses involved, and the privacy interests at stake.

■ In reviewing Magistrate Judge Lefkow's decision,[3] the court was initially unconvinced that some portion of the affidavits could not be unsealed. For this reason, the court ordered the government to submit redacted versions of the affidavits. The court then reviewed the redacted and unredacted versions of the original affidavit of Postal Inspector James H. Tendick submitted in support of the warrant, a second affidavit of agent Tendick submitted to Magistrate Judge Lefkow in opposition to EyeCare's motion to unseal, along with a third affidavit of JoAnne Pattara, a case agent involved in the investigation. Agent Pattara's affidavit was filed with this court to explain the redactions. The court also held an *in camera* hearing with Jacqueline Stern, the Assistant United States Attorney assigned to this case, and Ms. Pattara, at which the issue of redaction and partial disclosure were thoroughly discussed.

This rather extensive review has convinced the court that ordering the release of the redacted version of the affidavits is impossible in the instant case for the reasons articulated by Magistrate Judge Lefkow. In addition to those reasons, the court also finds that a partial disclosure or redaction might mislead the reader to mistakenly conclude that certain persons and entities are either subjects of the investigation or are cooperating with the government. Thus, to redact the affidavits in an effort to legitimately protect the government's investigation might lead to the embarrassment of persons connected with EyeCare as employees, patients or otherwise, who have nothing to do with the investigation. It would be improper at this stage of the investigation to opt for partial disclosure in the name of access to judicial records only to violate the privacy rights of innocent persons.

Although the court has concluded that the procedures followed and the results reached by Magistrate Judge Lefkow were proper in this case, it remains troubled by the length of time between the execution of the search warrant in November 1994 and the present (more than a year). The court realizes that the government's investigation of EyeCare and related persons is extremely complex and requires the review of many thousands of documents and interviews with a large number of witnesses and potential witnesses.

---

stances of the particular case." *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1313.

3. This court's review of that decision is under an abuse of discretion standard. *Goetz*, 886 F.2d at 65.

The extraordinary step of sealing judicial records, however, cannot last forever. It is not hard for the court to envision a time when EyeCare would be entitled to claim that it has been under the investigative scrutiny of the government long enough without being indicted, particularly since one of the government's strongest arguments is the fact that EyeCare's right to disclosure of the warrant papers is very limited at the pre-indictment stage.

### CONCLUSION

For the reasons set forth above, EyeCare's appeal of the Magistrate Judge's order denying its motion to unseal the affidavit filed in support of the search warrant is denied. All papers under seal before the Magistrate Judge and this court, as well as the transcript of this court's *in camera* hearing shall remain under seal until the Magistrate Judge unseals the original affidavit or until further order of this court. The hearing set for January 18, 1996 is vacated.

### RULING ON EYECARE PHYSICIANS OF AMERICA'S MOTION TO UNSEAL AFFIDAVIT

LEFKOW, United States Magistrate Judge.

Eye Care Physicians of America ("EyeCare") has moved to unseal the affidavit filed with the court in support of a search warrant issued November 15, 1994 for the premises located at 3101 North Harlem Avenue, Chicago, Illinois. EyeCare seeks disclosure only to EyeCare and its attorneys and has obtained leave to file the motion to unseal and memoranda in support thereof under seal. EyeCare rests on a due process right to protect its own constitutional and statutory rights through obtaining knowledge of the contents of the affidavit, asserting that it must read the affidavit in order to evaluate whether to challenge the legality of the warrant. The United States Attorney opposes the motion on the ground that disclosure of the affidavit would jeopardize the investigation to which it pertains.

The record reflects that the warrant application was accompanied by a motion to seal which set out as grounds that disclosure would jeopardize an ongoing investigation being conducted by federal law enforcement agencies of various doctors, clinics, ambulatory surgical centers, and other entities engaged in providing health care services. The motion was granted for an undisclosed but definite period of time. An affidavit (also under seal) filed by the government in opposition to the pending motion, further asserts grounds and facts in support of maintaining the seal on the warrant application. This affidavit attests that disclosure would reveal names of witnesses and give the petitioner information concerning the ongoing investigation and thereby impede the investigation. EyeCare further asserts that national publicity resulting from the search has led members of the general public, including current and potential patients and members of the professional ophthalmic community to mistakenly believe that EyeCare has been shut down by the government; patients have expressed fear that they can no longer rely upon the quality of care provided by EyeCare; and public perception and confidence, particularly that of the elderly and indigent clientele served by EyeCare, has been impaired.

■ EyeCare rests on the following logic: Federal Rule of Criminal Procedure 41(g) requires the magistrate judge to file all papers submitted in connection with the warrant in order to protect a person's right to be free from unlawful search and seizure. In order to demonstrate (a) that the search was unlawful or (b) that it is entitled to lawful possession of its property, EyeCare must demonstrate lack of probable cause for issuance of the warrant. In order to establish lack of probable cause, EyeCare must know the contents of the affidavit made in support of the warrant. Its right to mount a meaningful challenge to the affidavit rests in procedural due process guaranteed by the Fifth Amendment.

EyeCare further asserts that disclosure will not jeopardize the investigation. EyeCare asserts that it has never attempted to resist a government investigation—there

have been several [1]—influence witnesses, destroy or alter documents or otherwise obstruct justice. Since the government has already seized thousands of documents, and because the grand jury subpoenaed documents during the days immediately following the search, there is no possibility that EyeCare can alter or destroy them. EyeCare also points out that the investigation is no secret; indeed, the search garnered widespread publicity, so the harm that might otherwise result from disclosure of a secret investigation is not present here. Even at that, EyeCare only seeks disclosure to itself and counsel, not to the public. EyeCare relies on *In The Matter of the Search of Wag–Aero, Inc.*, 796 F.Supp. 394 (E.D.Wis. 1992), and *In re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 209 (D.R.I. 1980).

The government responds to the motion from the viewpoint that any pre-indictment motion which EyeCare might bring to challenge the warrant, i.e., a motion under Rule 41(e), would be unsuccessful. Therefore, EyeCare is not entitled to see the affidavit. Because EyeCare cannot prevail on a 41(e) motion, the government believes the court need not address the question whether the affidavit should remain sealed to protect the secrecy and integrity of the grand jury investigation. But, it argues in the alternative that its reasons for secrecy outweigh EyeCare's interest in disclosure. The government believes the affidavit would reveal the direction and progress of the investigation and would discourage witnesses from coming forward to testify fully and frankly before the grand jury. It asserts that unsealing the affidavit would also disclose the identities of witnesses and the substance of testimony that has been given to the grand jury.

Concerning the futility of a Rule 41(e) motion, the government relies on numerous cases involving motions for return of property in which the courts have said that equitable principles govern. *E.g., Floyd v. United States*, 860 F.2d 999, 1002–03 (10th Cir.1988).

As such, the movant must show irreparable harm, which is difficult to do pre-indictment, particularly where, as here, the property is documentary and the government has provided the movant with copies of all documents needed by the movant. *See Matter of Search of Kitty's East*, 905 F.2d 1367, 1375 (10th Cir.1990) (Because government had returned copies of business records requested by movant, court found movant was not aggrieved by the search).

The government next argues that EyeCare is not entitled to seek a declaration that the search was illegal until after charges are brought, *citing, inter alia, Matter of 949 Erie Street, Racine Wis.*, 824 F.2d 538, 541 (7th Cir.1987), where the court of appeals refused to consider the appeal of a denial of a Rule 41(e) motion where the motion was not directed primarily toward the return of seized property. The government states that if charges are brought against EyeCare, it will have an opportunity to test the legality of the warrant. If no charges are brought, the government will simply return the property or, if not, EyeCare may sue under Rule 41(e) for its return.

Finally, the government insists that secrecy of the affidavit is appropriate in this instance and that EyeCare's real interest is in discovering for itself and another subject, Dr. James Desnick, a road map for the investigation. The government relies on several cases in which secrecy of a search warrant affidavit was maintained to protect the investigation. *Times–Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.1989); *Matter of Flower Aviation of Kansas, Inc.*, 789 F.Supp. 366, 368 (D.Kan.1992); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir.1988); *see also, United States v. Corbitt*, 879 F.2d 224, 235 n. 14 (7th Cir.1989) (movant must show compelling, particularized need for disclosure of presentence investigation report) and *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60

---

**1.** EyeCare states that, in addition to this investigation, Dr. James Desnick has been the subject of a 1989 federal grand jury investigation that resulted in no criminal charges; a 1990 U.S. Department of Health and Human Services investigation that resulted in no action; and an Illinois Department of Professional Regulation proceeding that has been pending for more than two years.

L.Ed.2d 156 (1979) (grand jury transcripts were properly denied to civil plaintiffs who were suing subjects of investigation).

The common law recognizes a general right to inspect and copy judicial records and documents. *Nixon v. Warner Communications. Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). The right is not absolute, however, and "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599, 98 S.Ct. at 1312-13. The cited cases illustrate how courts have exercised their discretion. In *Wag–Aero,* on which EyeCare relies, a magistrate judge on June 4, 1992, granted for a period of six months a motion to seal an affidavit made in support of a search warrant. The representation supporting the motion included the law enforcement agent's opinion that disclosure would enable the target company to obstruct the investigation and also might threaten the safety of an unnamed witness. On an appeal from denial of a motion to unseal, the district court unsealed the affidavit on August 14, 1992, stating that "the heavy cloak of secrecy has been misapplied in this case...." *Wag–Aero,* 796 F.Supp. at 395. Noting that the government as a result of the search had possession of a large number of documents and aircraft parts, which under the magistrate judge's order it could retain for six months before the target could examine the record, the judge concluded, "In my opinion, Wag–Aero has a right to consider whether it wishes to challenge the issuance of the search warrant and whether it wishes to seek to obtain the return of its property." *Id.* It added that the injury to Wag–Aero's due process rights flowing from non-disclosure significantly outweighed the government's interests recited in the affidavit. *Id.*

The government distinguishes *Wag–Aero* on the basis that there, the movant needed the affidavit in order to consider whether to seek the return of its property, pointing out that the ultimate resolution of *Wag–Aero* was mootness after the government returned the property. *See Wag–Aero, Inc. v. United States,* 837 F.Supp. 1479, 1486 (E.D.Wis. 1993) (Where parties agreed among themselves that all property would be returned on condition that the return would have no preclusive effect on any other proceeding, plaintiff was not entitled to further relief under Rule 41(e)).

In *Second Floor,* also cited by EyeCare, a magistrate judge had sealed the application on the representation that disclosure would frustrate an ongoing grand jury investigation. The court unsealed the warrant. The court, finding that the district court has inherent power to seal affidavits in proper circumstances, *id.* at 209, applied a standard that "the government must demonstrate a real possibility of harm before the court takes the unusual step of sealing a search warrant affidavit not based directly on grand jury testimony. The mere possibility of harm ... is not sufficient to outweigh the established policy embodied in Rule 41(g)." [2] The court rejected the government's unspecific assertion that harm would result because future grand jury witnesses would be able to tailor their testimony in light of the affidavit and thereby frustrate the investigation.[3]

2. Rule 41(g) requires the magistrate judge to file with the clerk all papers in connection with the warrant. As the court pointed out, filing presumes "the general principle that all papers filed with the clerk become public record available for inspection." *Second Floor,* 489 F.Supp. at 209, citing, *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978).

3. In rejecting the government's showing, the court noted (as is the case here) that the original motion to seal had not claimed that the affidavit was based on information presented to the grand jury. Moreover, the government refused to disclose to the court whether the persons who supplied the information had testified before the grand jury when the affidavit was sworn, whether they had been called since, or would be called in the future. Nor would it indicate how the affiant had come by the information in the affidavit. The court therefore assumed that the witnesses had not testified at the time the affidavit was made, but that some of them might be called in the future. The court, however, distinguished between information that derived from the grand jury and material prepared by the government prior to a grand jury proceeding, noting that the veil of secrecy covers the proceeding, not the subject matter of the investigation.

The cases on which the government relies entailed petitions by the press asserting the public's First Amendment right to know. In *Secretarial Area*, the court recognized a qualified right of access under the First Amendment, requiring the government to show that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable. *Flower Aviation* rejected a right under the First Amendment but under *Nixon* applied the common law right of access subject to the court's determination whether circumstances warrant disclosure. *Flower Aviation,* 789 F.Supp. at 368. In *Flower Aviation* and *Secretarial Area,* the sealing was upheld on the basis of protecting the privacy and safety of witnesses and maintaining the secrecy of the scope and nature of the investigation.

*Times Mirror* also rejected the First Amendment rationale underlying *Secretarial Area* and held further that a common law right of access did not extend to a search warrant affidavit while an investigation is ongoing. The court reasoned that warrant proceedings require secrecy for the same reasons grand jury proceedings require secrecy: otherwise, prospective witnesses would be hesitant to come forward, witnesses would be less likely to testify fully and frankly, and those expected to be indicted would flee or would try to influence the grand jury. *Id.* at 1215, *citing, Douglas Oil,* 441 U.S. at 219, 99 S.Ct. at 1673. "In other words, the secrecy of the grand jury proceedings is maintained in large part to avoid jeopardizing the criminal investigation of which the grand jury is an integral part." *Times Mirror,* 873 F.2d at 1215.

Here, unlike the press cases, the subject of the warrant is the only person seeking access. EyeCare believes this makes a difference. EyeCare distinguishes its need for the information from that of the press as a need to protect its fundamental Fourth and Fifth Amendment rights. Some support for this may be found in *Corbitt,* where the court indicated that a compelling particularized need for litigation purposes might be more readily shown than need merely for publication by the press. *Corbitt,* 879 F.2d at 239–40. Describing how the defendant's right of

access had gradually been established "based on compelling considerations of fairness to the person most directly affected," the court reasoned that those considerations had no relevance to third party requests for disclosure. *Id.* at 236–37.

EyeCare's compelling need, however, is not comparable to the defendant in *Corbitt,* who faced sentencing based on a report he had not seen and thus could not respond to. EyeCare's need for the affidavit derives from three potential courses of action: to evaluate whether to bring a 41(e) motion for return of property, to move to suppress evidence, or to bring a *Bivens*-type civil action for damages based on violation of a Fourth Amendment right to be free from unreasonable searches and seizures. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (subject of search had implied right of action against federal agents who allegedly violated his Fourth Amendment rights). EyeCare has access to copies of all property taken, which under cases illustrated by *Kitty's East* and *949 Erie Street* would defeat any 41(e) motion. A motion to suppress cannot be brought until charges have been filed. *See 949 Erie Street,* 824 F.2d at 540 (motion under Rule 41(e) cannot be used to challenge a search unless the motion is solely for the return of property and is in no way tied to a criminal prosecution against the movant). Certainly, a *Bivens*-type action at this time would also be premature for the same reasons a 41(e) motion cannot be used to determine issues of admissibility at a criminal trial. *See id.* EyeCare has also alluded to damage to its reputation caused by the search. Because EyeCare intends to keep the affidavit secret, however, disclosure to EyeCare could do nothing to repair that damage. EyeCare also concedes that public disclosure would not serve EyeCare's interest. In this particular instance, then, EyeCare's interest in disclosure has not been shown to be more compelling than that of the press treated in the cases.

In any event, the question for decision is whether the court should exercise its discretion to unseal the affidavit at this time and

for what reasons. The Seventh Circuit has not addressed the issue of access to search warrant materials although it is likely that it would recognize a common law right of access in light of *Corbitt,* where the court held a common law right of access attached to pre-sentence investigation reports, finding that the court had discretion to grant disclosure based on a showing of "compelling, particularized need." Thus, a right of access committed to the sound discretion of the court will be applied here.

■ Concerning whether the affidavit may be unsealed at this time, a reasonable procedure was set out in *Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 65 (4th Cir.1989). There the court stated that the decision to seal must be articulated specifically enough that a reviewing court can determine whether the closure order was properly entered. *Id.* at 65. Where the decision is to seal, the judicial officer must consider alternatives, such as partial disclosure or giving access to a redacted version. Applying this procedure, I have reviewed the affidavit supporting the motion and the affidavit supporting the warrant. I reaffirm my conclusion that probable cause supported the issuance of the warrant. I reaffirm my conclusion that disclosure of the affidavit could result in breaching the secrecy of grand jury testimony and subpoenas, that the privacy of implicated persons who have not been charged, other witnesses and patients would be impaired by disclosure; that the identity of unnamed subjects would become clear to petitioner which disclosure could jeopardize the investigation in light of particular instances revealed in the government's affidavit made in opposition to the pending motion in which persons on behalf of petitioner have taken actions to discourage cooperation; that disclosure of numerous potential witnesses could result in their unwillingness to cooperate with the government; and that the scope of the investigation would be revealed so as to give petitioner premature guidance concerning potential charges.

I have also considered whether portions of the affidavit could be disclosed without the difficulties recited above. I agree with the government's position that the redaction would entail such a large portion of the affidavit that it is not a practical alternative. It is simply not a realistic solution in light of the complexity of the investigation, the interrelatedness of the material contained in the affidavit, the numerous witnesses involved and the privacy interests at stake.

By the same token, EyeCare has not persuasively articulated a need for the affidavit at this time. EyeCare's Fourth Amendment right to be free from unreasonable searches and seizures is one that it is entitled to vindicate. This inheres with the necessity to see the affidavit at some point even if charges are not ultimately filed. But, as indicated above, denial of access to the affidavit at this time does not impair EyeCare's right to due process of law.

■ Finally, the motion entails issues concerning the handling of sealed warrant materials for which clear rules have apparently never been set in this district. At present, there is no public record of this warrant application, the issuance of the warrant, its return, the inventory, the motion to seal or the order to seal, including its duration, because it has, according to custom, been held in chambers by the courtroom deputy clerk to the issuing magistrate judge. Clearly, under Rule 41(g), the warrant, the return, the inventory and all other papers in connection therewith should be filed with the clerk, in the Clerk's office. In my view, where a motion to seal the affidavit is made and granted, the warrant, the motion to seal, the order to seal, the return and the inventory, are presumptively available to the public, including the movant, and must be placed in the court file. Any broader scope of sealing must be addressed in a motion to seal.

### ORDER

For these reasons, the motion to unseal the affidavit is denied. The clerk is directed to place the following documents in the public record: The warrant, the motion to file under seal (November 15, 1994); the order granting the motion and the order to seal (November 18, 1994); the motion to file in camera, and without petitioner's review the supporting affidavit of government's motion

in opposition to motion to unseal (February 10, 1995), the order granting said motion, and the order to seal (February 10, 1995). The order to seal of February 10, 1995 is hereby modified so that it shall expire at the same time as the order to seal the application for the warrant and the affidavit. This order is hereby stayed for ten days to permit the government to seek review in the district court if it so desires.

Dated: June 7, 1995